## REPUBLIC BRASS CO. v. SPEAKMAN CO.
### No. 679.

District Court, D. Delaware.
June 20, 1930.

Charles H. Howson (of Howson & Howson), of Philadelphia, Pa., John B. Hull (of Hull, Brock & West), of Cleveland, Ohio, and John Biggs, Jr., of Wilmington, Del., for plaintiff.

John E. Hubbell, of New York City, and Robert H. Richards, of Wilmington, Del., for defendant.

MORRIS, J.

Claims 3, 4, 5, and 6 of patent 1,556,406, granted October 6, 1925, upon an application filed April 2, 1925, to Leon Block, assignor to the Republic Brass Company, the plaintiff, are here in issue. Speakman Company, the defendant, is charged with infringement of those claims. The patent has to do with a valve mounted in the wall and controlling the flow of water to a bathtub or shower through piping embedded in a bathroom wall. Instead of having a separate valve in the line to cut off the water from the valve casing when washers for the valve facings are to be replaced, Block disclosed a supplemental cut-off valve in the valve casing proper and in such close proximity to the main valve that a single small escutcheon, through which the main valve stem, but not the supplemental valve stem, extends, covers both.

But plaintiff's patent does not broadly claim a wall valve structure of main and supplemental valves mounted in the same valve casing and operable through the same wall opening. Structures of that broad character were disclosed in the prior art patents 1,517,990 to Hinkle, and 1,210,105 to Schnaier. Moreover, British patent 9446 of 1896 to Page illustrates an exposed integral structure comprising a valve casing having main and supplemental valves therein. The function of the Page supplemental valve, like that of Block, was to cut off the water to permit the removal of the main valve for repairs. Though it does not appear that it was ever so used, the Page structure was suitable for use with thin walls or, by elongation of stems and housing in keeping with the well-known prior art practice with respect to wall valves, with walls of the usual thickness. About 1915 defendant manufactured the valve fixtures that were installed in the Du Pont Hotel in Wilmington. These fixtures are still in use. They comprise a main valve and a supplemental valve in separate casings nippled together. There was no long-felt want or demand for an integrated structure comprising the ordinary main and supplemental valves in bathroom water supply lines. It was not until after the bathroom began to be generally regarded, not merely as a place for the installation of the requisite plumbing fixtures, but as a place that could and should be made attractive or artistic in appearance, that an appreciation that an integrated structure might be more generally desired came into being. Engineers and those skilled in the art with the Page device before them could readily integrate the separate structures in the DuPont Hotel. The Block fixture has no operative advantage over these separate valves. The only advantages claimed for Block are a lower valve production cost, a lower installation cost resulting from a single wall opening covered by a single small escutcheon and im-

proved appearance. None of these advantages are great, and the first two are somewhat problematical.

In view of the extent of the prior art and the consequent breadth of field in which skilled workmen and engineers were at liberty to make improvements, without suffering trespasses by squatters claiming the rank of inventors, the inventive opportunities were, apparently, not great. But there was, perhaps, room for invention, with respect to the details or form of an integrated structure. And it is here, it seems to me, that Block's inventive act, which will be assumed, must be found. He discloses a valve casing having a partition provided with an opening which may be closed by the supplemental or cut-off valve, and another opening, threaded, into which is screwed a tubular valve seat "extending a considerable distance" into the cylindrical chamber portion of the valve casing, which is of sufficient length to extend through the wall and tile facing. The valve, having the usual detachable facing, and carried on the inner end of the valve stem, is seated upon the tubular valve seat. The stem extends outwardly, through the center of the escutcheon, a sufficient distance, and carries the usual detachable operating knob or handle. The supplemental valve has a stem in a housing screwed into the casing and extending, parallel with the cylindrical portion of the valve casing proper, into the opening in the wall. The outer end of this housing, as well as the supplemental valve stem, which has a slotted outer end so that it may be turned by a screw-driver, are covered and concealed by a single small escutcheon having a circular base.

By this arrangement plaintiff obtains a compact structure. In fact, it is so compact that to remove the supplemental valve its screwed-in housing must be removed from the main valve casing. To give to the main valve the advantages of a high seat, a long tubular valve seat is screwed into the partition beneath the main valve.

Defendant's device is likewise a wall valve structure of main and supplemental valves mounted in the same valve casing and operable through the same wall opening. Moreover, defendant, like plaintiff, employs for its supplemental valve a low seat, and for its main valve a high seat. But here the similarity ends. Defendant's structure is heavier and sturdier. It is not so compact. It requires a larger wall opening. Its supplemental valve stem is housed, not in a separate housing screwed into the main valve casing, but in the main valve casing. In this casing defendant employs two partitions—not one, as does plaintiff. Of these one is low. Its opening is closed by the supplemental valve. The other is high. Into its opening is screwed a short valve seat for the main valve. In this structure the separate high partition takes the place of a part of the low partition and of the long body portion of the valve seat member of the plaintiff. High and low seated valves were well known to the prior art. Both were illustrated on page 88 of defendant's 1922 catalogue, and in the Page structure.

Does defendant's device fall within the claims in issue, when these claims are properly construed?

Claim 3 includes as one element "a housing for said [supplemental valve] stem connected to the valve casing." Read in the light of the specification, the word "connected" means integrally united by screwing the separately made housing into the valve casing, which results in greater compactness and lower cost of production of the whole. This word, so limited in its meaning, cannot embrace defendant's differently constructed device, which lacks the advantages of compactness and low cost of production possessed by that of plaintiff. Claims 4 and 6 have the same limitation. But claim 4 contains another limitation—"the outer end of said supplemental valve stem being adjacent the outer edge of the wall opening." This is necessary in order that a single escutcheon of usual design associated with the main valve stem may cover and conceal the supplemental valve stem. Defendant extends its supplemental valve stem beyond the face of the wall and into an aperture provided for that purpose in its escutcheon of special design. Its purpose is that this stem may be visible and easily accessible for operation. To this end defendant merely consolidates the two escutcheons employed by it in the DuPont Hotel, and rejects the advantages of a simple escutcheon and concealment of the supplemental valve stem end. Claim 5 contains as elements "a valve casing having two openings in its partition" and "a tubular seat for the main valve." As hereinbefore pointed out, defendant makes use of different means and elements to obtain a high seat for its main valve.

Since plaintiff's patentable novelty rests upon form or structure as distinguished from function, and since defendant has departed from plaintiff's form and structure and has modified the Page structure or consolidated

the high and low seated valves of the prior art, it cannot be held to have infringed the claims in suit. Westinghouse v. Boyden, 170 U. S. 537, 18 S. Ct. 707, 42 L. Ed. 1136; Long v. Pope Mfg. Co., 75 F. 835, 839 (C. C. A. 1). The bill of complaint must be dismissed.